DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas that found appellant guilty of one count of endangering children in violation of R.C. 2919.22(B)(1). For the reasons that follow, this court affirms the judgment of the trial court.
Appellant sets forth the following assignments of error:
"First Assignment of Error
 "DEFENDANT-APPELLANT'S CONVICTION IS SUPPORTED BY INSUFFICIENT EVIDENCE AND IS THEREFORE A DENIAL OF DUE PROCESS.
"Second Assignment of Error
 "DEFENDANT-APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
"Third Assignment of Error
 "THE DEFENDANT-APPELLANT'S SENTENCE IS NOT SUPPORTED BY THE EVIDENCE.
"Fourth Assignment of Error
 "INSOFAR AS ANY ERROR COMPLAINED OF WAS NOT ADEQUATELY PRESERVED BELOW, DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL."
The facts that are relevant to the issues raised on appeal are as follows. On September 11, 1998, appellant was charged with one count of child endangering in connection with severe burns two-year-old Joi Knowles suffered from scalding hot bath water. Joi suffered the burns on May 6, 1998, while she and her brother were under appellant's care. Appellant entered a plea of not guilty to the charge and waived his right to a trial by jury. On January 5, 1999, the case proceeded to trial and the following testimony was heard.
Ebony Hollis, Joi's mother, testified that on May 6, 1998, she was living at 620 1/2 Belmont Avenue in Lucas County with her two children and appellant. Hollis stated that at 11:00 a.m. on May 6, 1998, as she arrived home from school for lunch, she met appellant coming down the back stairs to tell her that Joi had been hurt. Hollis testified that she went up the stairs and found Joi lying on her bed under the covers. She stated that Joi was not crying. Hollis saw that Joi's legs were red from the mid-calf down and that she had one or two blisters on each leg, with a few little blisters around her toes and the top of her feet. She did not at that time ask appellant what had happened. She testified further that appellant called for an ambulance, which arrived in less than five minutes. Hollis testified that the water in their house was "hotter than usual" and that steam would come out as soon as the hot water was turned on. She stated that appellant had used the hot water during the time he lived with her in the duplex. Hollis further testified that Joi was taken to the hospital by ambulance. Hollis testified that she was unable to tell the doctors how Joi had been burned, so she left the hospital after fifteen or twenty minutes to go home and ask appellant what had happened. She stated that, while she and appellant drove back to the hospital, appellant told her that Joi had wet her pants so he set her on the toilet. He told Hollis that he left Joi because the baby started to cry and while he was in the other room Joi climbed into the tub full of hot water and fell. Hollis stated that appellant told her Joi was lying on the floor when he found her and that he picked her up and put burn medication on her and soaked her legs in cool water. She further stated that as soon as she got back to the hospital she told the doctors what appellant had told her. Hollis testified that Joi was in the hospital for approximately one and a half months. She stated that she has seen Joi climb into the bathtub herself but has not seen her climb back out herself.
Michael Omori, an emergency physician at St. Vincent Mercy Medical Center, testified that he has been an emergency physician since 1983. Omori stated that for ten years he worked at a hospital in Pennsylvania that was a regional burn center and saw twenty or thirty burn cases each year during that time. Since working in Toledo he has diagnosed and treated approximately the same number of burn cases in children each year. Omori testified that he has had occasion to diagnose and treat burn cases that he felt were suspicious in nature, several of which were immersion injuries.
Omori testified that Hollis told him Joi was being cared for by appellant, who had told her that he was giving the child a bath when Joi turned on the hot water faucet. The doctor stated that when he examined Joi he observed burns encompassing the lower extremities from approximately several centimeters below the knees down the leg to the foot and on the bottom of the foot. Omori testified that in his opinion the temperature of the water that burned Joi was at least 110 to 120 degrees. Omori stated that Joi's burns did not appear to be splash burns because of the circumferential pattern. He stated that splash burns are usually distinguishable from immersion burns because, with an immersion burn, there is typically a level of demarcation between the burned and non-burned areas that corresponds to the level of the liquid into which the limb was immersed. Omori further stated that in his opinion Joi's burns were "quite suspicious in nature" and said he based his opinion on the pattern of the burns. The doctor testified that based on his experience of having conducted tests of physical strength of children, he would expect that a normal, healthy two-year-old could climb into and out of a bathtub without help. He further testified that after placing one foot into very hot water and feeling pain, a normal two-year-old would not put her other foot in the water.
David Mullen, a detective with the Toledo Police Department, testified that a uniform crew notified him that an injured child had been taken to St. Vincent Hospital. Mullen went to the hospital and spoke with Hollis. Mullen stated that he initially thought Joi's burns appeared to be splash injuries but later changed his mind.
Bernie Moss, a detective with the Toledo Police Department, testified that he spoke to appellant at the hospital. He stated that appellant told him that Joi wet her pants so he spanked her with a belt and set her on the toilet. Appellant told Moss that he then heard the baby crying and left Joi to check on the baby. Appellant told the detective that he heard Joi cry and returned to the bathroom to see her standing in the tub trying to get out.
Diane Scala-Barnett, a deputy coroner and forensic pathologist for the Lucas County Coroner's Office, testified that she has consulted in cases involving burn injuries to young children. Scala-Barnett stated that in this case, after reviewing medical records, photographs and police reports, it was her opinion that Joi suffered a non-accidental immersion burn. Scala-Barnett further stated that Joi's injuries were too symmetrical to have occurred by the child climbing into the tub on her own. She stated that if Joi had climbed into the tub, she would have received asymmetrical splash burns. Scala-Barnett further testified that the fact that the soles of Joi's feet were not burned indicates to her that the child's feet were held against the bottom of the tub, which is cooler than the surface water, and were thereby spared severe burning. She further explained her opinion that if the child had climbed out of the tub on her own, one leg would have come out of the water before the other, which would result in the first leg having less severe burns. She stated that, based on the photographs she examined, both Joi's legs received the same severity of burns.
Appellant testified on his own behalf as to the events surrounding Joi's injuries. Appellant stated that on the morning of May 6, 1998, Hollis was at school so he got up with the two children, fed them and ran some bath water for himself. After he sat down to watch television with the children, Joi "used the bathroom on herself" so he "spanked" her on the bottom with a belt, took her into the bathroom, undressed her and sat her on the toilet. Appellant further testified that while Joi was on the toilet he went to check on the baby. While he was with the baby, he heard a noise and then heard Joi start to cry. When he went into the bathroom, he saw Joi laying on her back on the floor between the tub and the toilet. Appellant testified that he picked Joi up and took her into the living room where he first noticed the blisters on her legs. He applied burn ointment and then put her feet into a bucket of cold water. As he was going to call an ambulance, Hollis came home. Appellant denied putting Joi in the tub on May 6, 1998, and denied any knowledge as to how she got into or out of the tub. Appellant further testified that he had lived in the apartment with Hollis for six months and knew the tap water could get extremely hot.
At the conclusion of testimony, the trial court found that the state had failed to prove beyond a reasonable doubt that appellant had violated R.C. 2919.22(B)(2) as set forth in the indictment but that the state had proved appellant guilty of violating the lesser included offense of R.C. 2919.22(B)(1). On February 11, 1999, appellant was sentenced to a period of incarceration of three years.
In his first assignment of error, appellant asserts that the evidence presented at trial was legally insufficient to support a conviction because the state did not prove that appellant abused Joi.
R.C. 2919.22(B)(1) states:
 "(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:
"(1) Abuse the child;"
"Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a verdict as to all elements of an offense. State v. Thompkins (1997), 78 Ohio St.3d 380. Upon review of the sufficiency of the evidence to support a criminal conviction, an appellate court must examine:
 "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
This court has thoroughly considered the entire record of proceedings in the trial court. Upon careful consideration of the law and the evidence presented at trial as summarized above, this court finds that sufficient evidence was presented from which, when viewed in a light most favorable to the prosecution, the trial court could have found that appellant abused Joi on May 6, 1998 in violation of R.C. 2919.22(B)(1).
Appellant also asserts under this assignment of error that the state failed to establish venue. Appellant argues that the record is devoid of any facts or circumstances from which reasonable minds could conclude beyond a reasonable doubt that the offense occurred in Toledo, Lucas County, Ohio. The record reveals that during direct examination, Toledo Police Detective Bernie Moss stated that the offense took place at 620 1/2 Belmont. The prosecutor then asked, "Is that Toledo Lucas County?" and Moss responded "Yes." We find that the foregoing was sufficient to establish that the offense occurred in Toledo, Lucas County, Ohio, and this argument is without merit. Accordingly, appellant's first assignment of error is not well-taken.
In his second assignment of error, appellant asserts that his conviction was against the manifest weight of the evidence because the evidence did not establish that appellant endangered Joi.
Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other. State v. Thompkins, supra, at 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. The Ohio Supreme Court has defined the standard applied to determine whether a criminal conviction is against the manifest weight of the evidence:
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id. at 388, citing Tibbs v. Florida (1982), 457 U.S. 31, 42.
To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id., quoting State v. Martin (1983), 120 Ohio App.3d 172, 175. Only if we conclude that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial.Id.
We have thoroughly reviewed the evidence in this case and find no indication that the trier of fact lost its way or created a manifest miscarriage of justice by finding appellant guilty of child endangering. Accordingly, appellant's second assignment of error is not well-taken.
In his third assignment of error, appellant asserts that his three-year prison sentence is not supported by the evidence. Appellant argues that the only evidence in the record to support the sentence that was imposed is the severity of Joi's injuries, and that there is nothing in the record to support the trial court's conclusion that appellant is a danger to the community.
The sentencing guidelines in R.C. 2929.12(C) do not provide a presumption of either a prison sentence or community control for third degree felonies. In deciding whether to impose a prison sentence for a third degree felony, the trial court is directed by R.C. 2929.13(C) to comply with the purposes and principles of sentencing under R.C. 2929.11 and the seriousness and recidivism factors defined in R.C. 2929.12.
Pursuant to R.C. 2929.11, the trial court noted orally at the sentencing hearing and in its judgment entry that appellant is not amenable to community control and that prison is consistent with the purposes of R.C. 2929.11.
The trial court indicated that it had balanced the seriousness and recidivism factors under R.C. 2929.12 when deciding whether to impose a prison term for appellant's third degree felony offense. At the sentencing hearing, the trial court stated that there was no question in its mind, based on the nature of the injuries, that "this was a deliberate act." The trial court further stated that it found, pursuant to R.C.2929.12, that the injuries were exacerbated by the age of the victim, that the injuries caused serious physical and psychological harm, and that Joi's relationship with appellant facilitated the commission of this offense. The trial court further noted that it had reviewed appellant's juvenile record which, the court believed, showed that appellant had not responded favorably to rehabilitative services that had been provided him.
R.C. 2929.14 guides the trial court in imposing specific prison terms. Here, the trial court imposed a prison term of three years, which is in the middle of the allowable range of one, two, three, four or five years for a conviction of a third degree felony. The trial court found that the shortest prison term would demean the seriousness of appellant's conduct and would not adequately protect the public from future crime by appellant or others. Consequently, the trial court fulfilled the criteria of R.C. 2929.14(B) for imposing a sentence longer than the one-year minimum authorized for a third-degree felony. See also R.C.2929.14(A).
Because our review of the record shows that the trial court clearly and convincingly complied with the requirements of R.C. 2929.11, 2929.12, 2929.13 and 2929.14, this court finds appellant's third assignment of error not well-taken.
In his fourth assignment of error, appellant asserts that "insofar as any error complained of was not adequately preserved below," he was denied effective assistance of trial counsel. In this "catch-all" assignment of error, appellant fails to cite to the record at all or articulate any instances wherein counsel's performance fell below an objective standard of reasonableness. Based upon this court's thorough review of each of appellant's assignments of error and our conclusions that the trial court did not commit any of the claimed errors, we find his fourth assignment of error not well-taken.
On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
______________________________ Richard W. Knepper, P.J.
Peter M. Handwork, J., Mark L. Pietrykowski, J. CONCUR.